**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**DONALD G. COUSINEAU,**

Plaintiff,

v.

**NORSTAN, INC.,**

Defendant.

---

Civil No. 00-1113 (DSD/JGL)

**REPORT AND RECOMMENDATION**

APPEARANCES

James Kaster, Esq., and Nicholas May, Esq., for Plaintiff.

Patricia Bloodgood, Esq., for Defendant.

---

JONATHAN LEBEDOFF, United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Magistrate Judge of District Court on September 4, 2001 on Plaintiff Donald G. Cousineau's Motion for Attorneys' Fees, Civil Penalties, and Entry of Judgment.

## I. INTRODUCTION

This breach of contract action arose from a dispute over commissions owed to Plaintiff Donald G. Cousineau ("Cousineau") by his former employer, Defendant Norstan, Inc. ("Norstan"). As Norstan's Director of Strategic Alliances, Cousineau's primary duty was to locate potential

FILED 9-10-01
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD.
DEPUTY CLERK

customers for Norstan's telecommunications outsourcing services. The employment relationship was memorialized in a Letter Agreement dated July 27, 1997 ("Letter Agreement"). During his tenure at Norstan, Cousineau procured two contracts relevant to this lawsuit: one with Grandview/Southview Hospital ("Grandview") in Dayton, Ohio, and one with AmerUs Life ("AmerUs") in Des Moines, Iowa. Cousineau sued Norstan over unpaid and underpaid commissions related to those contracts.

On July 26, 2001, the Honorable David S. Doty, United States District Court, granted Cousineau's motion for summary judgment on his claims for breach of contract and violation of Minn. Stat. § 181.14. The District Court held that Cousineau's commission on the Grandview contract should have been calculated assuming six years of guaranteed revenue rather than two years, as Norstan had asserted. With respect to the AmerUs contract, the court found that Norstan owed Cousineau a commission based on AmerUs's compliance with the fee schedule set forth in the final contract. Because Norstan failed to pay Cousineau his full commissions, the court found that Norstan violated Minn. Stat. § 181.14, which requires an employer to promptly pay commissions to an employee who quits or resigns.

Cousineau's current motion for attorneys' fees, civil penalties, and entry of judgment is now before this Court per the instruction of the District Court. Although Cousineau styled his motion in part as a motion for entry of

judgment, the civil docket reflects that judgment was entered on July 27, 2001. The remaining issues in the motion concern (1) the amount of the commissions owed to Cousineau under the Grandview and AmerUs contracts, (2) the amount of prejudgment interest owed to Cousineau, (3) whether Norstan is subject to a statutory penalty under Minn. Stat. § 181.14, (4) attorneys' fees, and (5) costs. Of these five issues, the parties are in agreement on two. The balance of the commissions owed to Cousineau is $478,709.00, in accordance with the District Court's order granting summary judgment. Also, Cousineau is entitled to costs in the amount of $28,226.27. Consequently, the Court will discuss only the issues of prejudgment interest, the statutory penalty, and attorneys' fees in this Report and Recommendation.

## II. DISCUSSION

### A. Magistrate Judge Authority

The first question for this Court is whether to address Cousineau's motion in an order or a report and recommendation. Title 28 U.S.C. § 636(b)(1) gives district court judges the authority to assign pretrial matters to magistrate judges. However, the present motion is not a pretrial matter, but a postjudgment one. Thus, the Court will proceed under § 636(b)(3), which permits a magistrate judge to "be assigned additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U.S.C. § 636(b)(3).

Federal Rule of Civil Procedure 54 pertains to postjudgment claims for attorneys' fees and provides in part that a district court "may refer a motion for attorneys' fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter." Fed. R. Civ. P. 54(d)(2)(D). Thus, Cousineau's request for attorneys' fees must be treated as a dispositive motion and addressed in a report and recommendation. See Rajaratnam v. Moyer, 47 F.3d 922, 925 (7th Cir. 1995); Massey v. City of Ferndale, 7 F.3d 506, 509-10 (6th Cir. 1993); Estate of Conners v. O'Connor, 6 F.3d 656, 659 (9th Cir. 1993). Likewise, the Court finds that Cousineau's requests for prejudgment interest and a statutory penalty are appropriately addressed in a report and recommendation. See Callier v. Gray, 167 F.3d 977, 983 (6th Cir. 1999) (finding proper under § 636(b)(3) a referral to a magistrate judge to determine damages). Finally, the Eighth Circuit has held that § 636(b)(3) does not permit a magistrate judge to enter a final decision, such as an order. See LeGear v. Thalacker, 46 F.3d 36, 37 (8th Cir. 1995) (citations omitted); see also Rajaratnam, 47 F.3d at 923; Massey, 7 F.3d at 509; Estate of Conners, 6 F.3d at 659 & n. 2.

**B. The Amount of Prejudgment Interest Owed to Cousineau**

The amount of prejudgment interest is determined by state law when the underlying claims are based on state law. See Northwest Airlines, Inc. v. Flight Trails, 3 F.3d 292, 297 (8th Cir. 1993). Here, Cousineau's

substantive claims were based on Minnesota law. Minnesota common law provides that prejudgment interest begins to accrue on a liquidated claim or on a readily ascertainable yet unliquidated claim when the claim arises. See Trapp v. Hancuh, 587 N.W.2d 61, 63 (Minn. App. 1998) (citing ICC Leasing Corp. v. Midwestern Mach. Co., 257 N.W.2d 551, 556 (Minn. 1997)). In 1984, the Minnesota Legislature enacted Minn. Stat. § 549.09, which "supplemented, but did not replace, the existing common law allowing prejudgment interest." Id. at 63 (citations omitted); see also Northwest Airlines, 3 F.3d at 297-98 (citations omitted). Section 549.09 provides for prejudgment interest to be computed from the time of the commencement of the action "[e]xcept as otherwise provided by contract or allowed by law." Minn. Stat. § 549.09, subd. 1(b).

Cousineau bases his position on the common law. He contends that he is owed prejudgment interest from the time his commissions were due because the amounts were clearly liquidated and readily ascertainable as of the dates they were owed. Cousineau claims that he was not paid his full commission on three different occasions. He was underpaid $124,679.00 on July 31, 1998, and $124,679.00 on October 31, 1998, for the Grandview contract. In addition, Norstan failed to make a commission payment of $229,351.00 on January 31, 1999 for the AmerUs contract. Accounting for these three different dates in the calculation of the interest, Cousineau

determined that as of August 20, 2001, he was owed $64,216.14 in prejudgment interest on the combined amounts. (Danielson Aff. ¶¶ 5-6.)

Norstan bases its position on the statute. For two reasons, Norstan contends that prejudgment interest did not begin to accrue until March 4, 1999, the date Cousineau's attorney sent a demand letter and draft complaint to Norstan. First, Norstan argues that the amount of the commissions claimed by Cousineau has varied throughout his employment and throughout the litigation. Second, Norstan believes it is difficult to determine the precise date when the commissions became due.

The Court finds that the prejudgment interest began to accrue from the time the commissions were due. It is not significant that the amounts Cousineau claimed to be owed varied prior to the order granting summary judgment. Both parties now agree that the amount is $478,709.00, in conformity with the District Court's order. Thus, the amounts due are readily ascertainable and have been ascertained. As for the question of when the commissions were due to be paid, the Letter Agreement provided that each commission would be paid in two installments: half on the last day of the month following the booking of the contract, and half ninety days after the acceptance of the installation of equipment and/or commencement of the outsourcing services and commencement of invoicing of equipment or services. (Bloodgood Aff. Ex. 1.) Norstan raises several arguments why the relevant

dates are not ascertainable, such as Grandview's dissatisfaction with the outsourcing services and equipment, Grandview's refusal to pay invoices, and the timing of the invoicing of AmerUs. However, Norstan did not raise these arguments when it paid Cousineau the amount of commissions it believed at the time to be correct. Norstan paid commission amounts of $17,305.00 on July 31, 1998, and $17,305.00 on October 31, 1998, to Cousineau for the Grandview contract. Norstan cannot now complain that the commissions were not due on those dates. Furthermore, the District Court noted in its order granting summary judgment that the second installment for the AmerUs contract was due on January 31, 1998. (Order of July 26, 2001 at 6, 16.)

Both the evidentiary record and the law of the cause support Cousineau's position that he was due $124,679.00 on July 31, 1998; $124,679.00 on October 31, 1998; and $229,351.00 on January 31, 1999. Accordingly, the Court recommends that the prejudgment interest should be calculated from those dates. The interest as of August 20, 2001 was $64,216.14.[1] (Danielson Aff. ¶ 6.)

---

[1] It is undisputed that interest on the outstanding amounts is accruing at $78.69 per day. (Danielson Aff. ¶ 6.) Cousineau requests, and the Court recommends, that the final amount awarded reflect any additional interest accumulated since August 20, 2001.

### C. <u>Whether Norstan Is Subject to a Statutory Penalty</u>

Cousineau prevailed on his claim brought pursuant to Minn. Stat. § 181.14, which states in relevant part:

> Subdivision 1. Prompt payment required. (1) When any such employee quits or resigns employment, the wages or commissions earned and unpaid at the time the employee quits or resigns shall be paid in full not later than the first regularly scheduled payday following the employee's final day of employment . . . .

Minn. Stat. § 181.14, subd. 1. The District Court concluded in its order of July 26, 2001 that Norstan violated § 181.14 and that "Cousineau is entitled to all remedies available to him under the statute." Subdivision 2 of the statute provides for a penalty for nonprompt payments:

> Wages or commissions not paid within the required time period shall become immediately payable upon the demand of the employee. If the employee's earned wages or commissions are not paid within 24 hours after the demand, the employer shall be liable to the employee for an additional sum equal to the amount of the employee's average daily earnings provided in the contract of employment, for every day, not exceeding 15 days in all, until such payment or other settlement satisfactory to the employee is made.

Minn. Stat. § 181.14, subd. 2.

Cousineau asserts that he is entitled to $45,559.83 because Norstan failed to pay his full commissions within the required time period. Norstan responds that § 181.14, subd. 3, exempts an employer from the penalty when it has made a good faith tender of the amount it believes is owed.

Furthermore, even if the penalty is applicable, Norstan argues that Cousineau miscalculated the amount.

Norstan is correct that the Minnesota Supreme Court has not squarely addressed the issue of whether an employer is liable for the penalty when it has made a good faith tender. In the view of this Court, the reason is that the statute clearly permits the penalty in such a situation. Norstan misconstrues the statute. Subdivision 3 of § 181.14 provides in relevant part:

> If the employer disputes the amount of wages or commissions claimed by the employee under the provisions of this section . . ., and the employer makes a legal tender of the amount which the employer in good faith claims to be due, the employer shall not be liable for any sum greater than the amount so tendered and interest thereon at the legal rate, unless, in an action brought in a court having jurisdiction, the employee recovers a greater sum than the amount so tendered with interest thereon . . . .

Minn. Stat. § 181.14, subd. 3 (emphasis added). Nowhere does the statute indicate that an employer who makes a good faith tender is liable only for the amount ultimately determined to be owed, plus interest. The statute places no upper limit on the employer's liability. The only limit on an employer's liability occurs if the employer makes a good faith tender and if the employee does not recover a greater amount in a court action. Norstan apparently overlooks the phrase beginning with "unless," which indicates that if an employee recovers a sum greater than the amount tendered, the employer may be liable for, at minimum, that greater sum. Thus, subdivision 3 clearly allows for the penalty

provided by subdivision 2 even in cases where an employer makes a good faith tender.[2] See O'Kronglis v. Broberg, 456 N.W.2d 468, 470 (Minn. App. 1990).

As for Norstan's challenge to the amount claimed by Cousineau, the parties disagree about the length of his employment at Norstan. Cousineau submits that he was employed at Norstan from July 1, 1997 to February 15, 1999. According to Norstan, Cousineau was employed from July 1, 1997 to June 30, 1999. The difference in time affects the calculation of Cousineau's average daily earnings.

Cousineau offers no evidentiary support for his assertion that his employment ended on February 15, 1999. On the other hand, the Letter Agreement states that Cousineau's employment commenced on July 1, 1997, and would terminate on June 30, 1998 unless extended by the parties or renewed automatically. (Bloodgood Aff. Ex. 1.) Absent evidence to the contrary, the Court assumes that the contract was renewed automatically for one year. (Id.) This assumption is substantiated by a letter from Cousineau to Norstan in which he conveyed his understanding that the employment agreement was terminated as of June 30, 1999. (Bloodgood Aff. Ex. 2.) While

---

[2] Norstan argues that imposing the penalty in cases in which the employer has made a good faith tender will discourage employers from making such tenders and will nullify the safe harbor. The Court disagrees. In cases where an employer makes a good faith tender, and the employee nonetheless sues but recovers a sum equal to or less than the tender, the penalty cannot be assessed.

Cousineau may not have actually worked from February through June 1999, his employment contract remained in effect.

Accordingly, for the purpose of calculating Cousineau's average daily wage, the length of employment is two years. Using this time frame, the statutory penalty should be $36,885.94. (Nardecchia Aff. ¶¶ 2-5.)

**D. Attorneys' Fees**

Cousineau relies on Minn. Stat. § 181.171 in his request for attorney's fees. The statute provides in relevant part:

> Subdivision 1. Civil action; damages. A person may bring a civil action seeking redress for violations of section[] . . . 181.14 . . . directly to the district court. . . .
>
> . . . .
>
> Subd. 3. Attorney's fees and costs. In an action brought under subdivision 1, the court shall order an employer who is found to have committed a violation to pay to the aggrieved party reasonable costs, disbursements, witness fees, and attorney fees.

Minn. Stat. § 181.171, subd. 1, 3. Cousineau prevailed on his § 181.14 claim, and therefore, he now asks for $91,780.50 in attorneys' fees under § 181.171.

Norstan does not contest the reasonableness of the amount requested, but it argues that § 181.14 by its terms does not permit an award of attorneys' fees. Norstan relies on subdivision 3 of § 181.14, which states in part that if "the employee fails to recover a greater sum than [the amount originally tendered by the employer], the employee shall pay the cost of the

suit, otherwise the cost shall be paid by the employer." Minn. Stat. § 181.14, subd. 3. First, Norstan notes that the Minnesota Supreme Court has interpreted the phrase "cost of suit" in § 181.14, subd. 3, to include all "out-of-pocket expenses reasonably incurred in prosecuting or defending the action not including attorney fees." Anderson v. Medtronic, Inc., 382 N.W.2d 512, 516 (Minn. 1986) (citation omitted) (emphasis added). Second, Norstan argues that § 181.14, subd. 3, permits an employee to recover only the portion of the commissions which were not paid.

Dispensing with Norstan's second argument, the Court has already found that the language of § 181.14, subd. 3, does not preclude an employee from recovering the statutory penalty. The Court concluded that the statute does not limit an employer's liability to the "greater sum" recovered by the employee merely because the employer made a good faith tender. It therefore follows that the statute also permits an employee to recover attorneys' fees. Furthermore, the language of § 181.171, which governs fee awards in § 181.14 claims, does not exempt an employer from paying attorneys' fees merely because it made a good faith tender; rather, § 181.171 mandates an award of fees for any violation of § 181.14. Finally, Norstan's argument that such a reading of the statute would disadvantage an employer who makes a good faith tender is flawed. An employer would still benefit from making a good faith tender because an employee who nonetheless brings suit and recovers the

same amount as tendered or a lesser amount must pay the cost of the suit, not the employer.

Turning to Norstan's argument based on the Medtronic case, it is significant that Medtronic was decided ten years before the Minnesota Legislature enacted § 181.171 in 1996, which expressly authorized an award of attorneys' fees in cases brought under § 181.14. Clearly, the legislature intended for an employer who has committed a violation of § 181.14 to pay attorneys' fees to the aggrieved employee. See Minn. Stat. § 181.171, subd. 3. Although Norstan submits that the legislature should have amended § 181.14 specifically to allow for attorneys' fees, there was no need for such an amendment after it enacted § 181.171 to govern § 181.14. There have been only two cases, both unpublished, discussing § 181.14 with § 181.171 since the latter statute was enacted, both of which found that attorneys' fees were recoverable in a case such as this one. See South Side Sales & Leasing v. Maas, No. C0-00-455, 2000 WL 1239809, at *3 (Minn. App. Sept. 5, 2000); Huffman v. Premis Corp., No. C9-97-2239, 1998 WL 373065, at *3 (Minn. App. July 7, 1998).

The best reading of §§ 181.14 and 181.171, which would give equal credence to both statutes and would comport with Medtronic, is a plain reading with no need for interpretive explanation. By its terms, § 181.14, subd. 3, determines (1) when an employer is liable for only an amount previously

tendered or for a sum greater than that amount, and (2) which party must pay the cost of the suit, not including attorneys' fees. Section 181.171 provides for an award of attorneys' fees when an employer violates § 181.14. Consequently, Norstan should be required to pay Cousineau's attorneys' fees in the amount of $91,780.50.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Plaintiff Cousineau's Motion for Attorney Fees, Civil Penalties, and Entry of Judgment (Doc. No. 40) be **GRANTED IN PART** and **DENIED AS MOOT IN PART** as follows:

(1) The request for entry of judgment should be **DENIED AS MOOT**;

(2) The request for commissions should be **GRANTED**, and the amount awarded to Plaintiff should be $478,709.00;

(3) The request for prejudgment interest should be **GRANTED**, and the amount awarded should be $64,216.14 plus interest accrued since August 20, 2001;

(4) The request for a statutory penalty under Minn. Stat. § 181.14 should be **GRANTED**, and the amount awarded should be $36,885.94;

(5) The request for attorneys' fees should be **GRANTED**, and the amount awarded should be $91,780.50; and

(6) The request for costs should be **GRANTED**, and the amount awarded should be $28,226.27.

Dated: September 10, 2001

JONATHAN LEBEDOFF
United States Magistrate Judge

Under D. Minn. LR 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by 9-24-01, a writing which specifically identifies those portions of this Report to which objections are being made and the basis of those objections. A party may respond to the objecting party's brief within ten days after being served with it. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.